*THOMAS E. MOSS*
*UNITED STATES ATTORNEY*
*JAMES M. PETERS, WSB NO. 7295*
*ASSISTANT UNITED STATES ATTORNEY*
*DISTRICT OF IDAHO*
*WASHINGTON GROUP PLAZA IV, SUITE 600*
*800 PARK BOULEVARD*
*BOISE, IDAHO 83712-9903*
*TELEPHONE: (208) 334-1211*

*ALEXANDRA GELBER, DC BAR # 473773*
*TRIAL ATTORNEY, UNITED STATES DEPARTMENT OF JUSTICE*
*CHILD EXPLOITATION AND OBSCENITY SECTION*
*1400 NEW YORK AVENUE NW, SUITE 600*
*WASHINGTON, D.C. 20530*
*TELEPHONE: 202-307-1316*

*UNITED STATES DISTRICT COURT*
*DISTRICT OF IDAHO*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY LEVIS BANKS, SR.,<br><br>Defendant. | ) | CR No. 06-051-S-BLW<br><br>**GOVERNMENT'S NOTICE PURSUANT TO FED. R. EVID. RULES 404(b) and 414** |

COMES NOW the United States Attorney for the District of Idaho and gives notice of the United States' intent to offer "other acts" evidence under Fed.R.Evid. 404(b) and 414 for their bearing on matters to which they are relevant. Rule 404(b) requires the government to give "reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to

introduce at trial." Rule 414 provides that the government "shall disclose the evidence to the defendant, including statement of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial . . ."

The United States submits that many of the facts described below do not fall within the scope of Rules 404(b) or 414 because they are either part of ongoing transactions or are "inextricably intertwined" with the facts leading to the indictment against Mr. Banks. For example, in *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002), the defendant was charged with importing more than 1,500 pounds of marijuana. His defense was that he was tricked into transporting the marijuana by a cooperating witness. This witness testified at length about prior drug runs that the defendant had made on his behalf. The Ninth Circuit held that the witness's testimony was "inextricably intertwined" with the charged offense, because it was "intended to establish [the witness's] relationship to [the defendant and] to show that the relationship was ongoing . . ." *Id*. *See also*, *United States v. DeGeorge*, 380 F.3d 1203, 1219-20 (9th Cir. 2004) (evidence of prior acts may be admitted without regard to Rule 404(b) if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge.")

**Discovery**

The United States made its entire file, including the FBI 302 reports, the search warrant and affidavit, witnesses' statements, contraband images, and electronic media available for inspection by defense counsel on February 23, 2006, before the Defendant was indicted. With the exception of the contraband images, copies of all additional materials have been provided to the defense as it has become available. In the case of contraband and the actual electronic media on which it was found, that has been and continues to be available for inspection by defense counsel at the U.S. Attorney's Office or the office of the FBI at any time during business hours.

**Summary of Charged Conduct**

The Defendant is charged in Counts One and Two with possession of sexually explicit images and videos of minors on four CD's (Count One) and on four separate items of computer hardware (Count Two) found in the garage next to his home on Vista Avenue in Boise. The garage had been converted into an office and was filled with computer equipment.

In Count Three, he is charged with producing a sexually explicit video (called "test.wmv") of a two-year-old relative.

In Count Four, the Defendant is charged with transporting the "test.wmv" video by computer to a convicted child molester from Edmonton, Alberta (the "Canadian witness").

Count Five alleges that Banks transported to the Canadian witness, via a computer, a video of an unidentified baby boy being molested.

Count Six alleges that Banks received three sexually explicit videos of the Canadian witness's stepchildren by computer.

Counts Seven and Eight relate to the Defendant's contact with Linda Martin of Long Beach, California. Count Seven charges the Defendant with attempting to entice Martin to engage in criminal sexual conduct. The evidence will show that Banks believed Martin was a 12-year-old girl, although she is actually over fifty years of age. Martin will testify that Banks tried to solicit her for sex, sent her a web cam and asked her to use it for "cyber sex," sent images of himself performing sex acts to her, and sent her the child pornography charged in Count Eight.

**Anticipated Defense(s)**

The Defendant has stated in pretrial pleadings that he will be mount an "identity" defense.[1] The United States expects him to claim that he was not aware of nor responsible for the child pornography on his computer, arguing that another person or persons used his computers without his knowledge to possess, transport, and receive the sexually explicit images of minors and to chat with Linda Martin. With respect to the "test.wmv" video that is included in Count II (possession) and Count IV (transportation) and is the sole basis for Count III (production), the Defendant has suggested he will argue that the content of the video is not child pornography or, more technically, that the video does not depict a minor engaged in sexually explicit conduct. (*Dkt.* 39).

**Summary of Probative Value of "Other Acts" Testimony and Evidence**

"Other acts" testimony is admissible under Fed.R.Evid. 404(b) if it is probative of the defendant's motive, opportunity, intent, knowledge, identity, and absence of mistake or accident.[2] Because the Defendant is expressly putting his identity and knowledge at issue, evidence which connects the Defendant to these crimes and establishes his knowledge and intent to commit these crimes is highly relevant.

In general, the testimony concerning the "other acts" will show that during the period alleged in the Indictment, the Defendant was involved in ongoing online relationships with the

---

[1] See *Dkt. 35*, Defendant's Memorandum in Support of Motion to Exclude Photographs, pp 5 & 6, asserting that the only dispute between the parties centers on the identity of the person who possessed, received and transported the images. See also *Dkt. 48*, Defendant's Reply Brief, pp 3 & 4, where Defendant expands on his offer to stipulate to all elements except identity as to Counts 1, 2, 4, 5, 6 and 8.

[2] Because the Defendant is charged with a crime of child molestation in Count III, the other acts are also admissible with respect to that count under Rule 414. *See* Dkt. 40 for further discussion of the application of Fed.R.Evid. 414 to this case.

Canadian witness, Linda Martin, and others on the Internet, most known only by their screen names. Testimony and evidence will show that the Defendant hosted a chat room called "Kid Sex and Incest" (and which may have also been known by other names) where individuals could discuss sex between adults and minors, incest, and trade images of child pornography. Transcripts of MSN Messenger chats found on the Defendant's computer will show he participated in specific discussions about sex with minors and the production and transportation of child pornography.[3] The evidence will show that Mr. Banks was quite open about his deviancy – not only with his online friends, but with members of his immediate family.

Since Mr. Banks challenges whether the "test.wmv" video depicts sexually explicit conduct, the context in which the video was made and used is critical. The other acts evidence, which includes a chat transcript in which the Defendant discusses the content of the video, and makes references to the baby's erection, reveals the Defendant's motive for his production of the video and undercuts his claim that the video is lawful. *See, e,g., United States v. Cross*, 928 F.2d 1030, 1047-48 (11th Cir. 1991) (correspondence with codefendant was of considerable probative value in proving the defendant's intent to create and market child pornography.)

**A. General Nature of "Other Acts" Testimony**

1. Prior Conviction.

The United States intends to prove that the Defendant pled guilty and was sentenced in Ada County case number CR 16884 on September 12, 1990, to Counts II and III of an Indictment charging him with Lewd Conduct with a Minor Under Sixteen, in violation of I.C. §18-1508. The victim of the counts to which Banks pled guilty was his son, Jerry Banks, Jr., then age 11-years. The Indictment specifies that the Defendant, on separate days in February

[3] Throughout this memo, the term "child pornography" is used in its generic sense to describe sexually explicit images of minors engaging in sexually explicit conduct.

1990, touched his son's penis with his hand and mouth with the intent to gratify the sexual desire of the Defendant. The Defendant served 12-years in prison on these two convictions, and was released in March of 2002. Proof of this prior conviction will be through certified copies of court records and, if necessary, prison records and testimony from members of Mr. Banks' family.

2. Jerry Banks, Jr.

Jerry Banks, Jr., is the father of "JB," the victim depicted in the "test.wmv" video charged in Counts Two, Three and Four. Jerry Banks, Jr., was the victim in the 1990 case which resulted in the Defendant's incarceration for twelve years. Jerry Banks, Jr., will testify that he cannot recall any period of time prior to his father's imprisonment in 1990 when his father was not sexually abusive to him, and that the Defendant would regularly fondle and masturbate him. This is the exact behavior depicted in the "test.wmv" video with the infant, "JB." Jerry Banks, Jr., will also testify that his father made him have sex with his sister, Tammy, who is three-years his junior.

Jerry Banks, Jr., will also testify that after his father got out of prison in 2002, he quickly became interested in computers. Jerry Banks, Jr., will testify that his father was a host/monitor of one or more WinMX chat rooms related to child pornography; that one of his father's screen names is "papasmurf;" and that his father told him that he (the Defendant) webcamed with other people. "Web camming" involves chatting live with another person using "web cams" so that both parties can see one another.

Jerry Banks, Jr., will testify that his father continually tried to show him child pornography on his (the Defendant's) computers. Jerry Banks, Jr., will testify that he has seen his father viewing child pornography at least twice since his release from prison in 2002.

Specifically, he will testify that his father showed him a picture from the Internet of a pregnant, naked girl, age 12 or 13-years, who the Defendant told him was from England.

3. Diane Renee Banks.

Diane Renee Banks is married to Jerry Banks, Jr. She is the mother of "JB," the victim depicted in the "test.wmv" video charged in Counts Two, Three and Four.

Diane Banks will testify that on several occasions the Defendant told her in explicit detail about his Internet web cam excursions with individuals he believed to be females who were between eleven and sixteen years of age who would undress for him and display their genitalia.

She will also testify that she worked for the Defendant for about six weeks in the Fall/ Winter of 2004-05 at his business, Bankscom Electronics. During that time, she observed the Defendant looking at pornography on the computer at the business (she did not see the details of the pornography, but the Defendant told her it was a 16-year-old girl spreading her legs). She also saw file names on the Defendant's computer at his office that concerned her, including names such as "pedo,"and "11 y/o," "mother-daughter," and "father-son."

With respect to Count Seven, Diane Banks will testify that the Defendant bragged to her about his plan to go to California to pick up a 12 or 13-year-old and bring her back to live with him in Boise. Diane will testify that on December 22, 2004, she accompanied her brother-in-law, Robert, sister-in-law Tammie, and another person to the Boise Police Department to report concerns about the Defendant's Internet activities with minors, and his stated intention of bringing a 12-year-old female to live with him. They reported their concerns to Boise Police Detective T.J. Gilbert.

Diane Banks will identify a photograph of a girl with brown hair as the photo of the girl in California that the Defendant said he was going to pick up and bring back to live with him. She will testify that the Defendant used to have that same photograph hanging in the garage

office at his house on Vista Avenue. (NOTE: Linda Martin will testify that the photo is one taken of her when she was a child, and that she sent the photo to Banks.)

4. Robert John Banks.

Robert Banks is another of the Defendant's adult children. He will testify that after his father got out of prison, his father spent all of his spare time in the garage where he had a number of computers, often only leaving to use the bathroom, and would sometimes sleep and eat in the garage. Robert Banks will testify that his father bragged about chatting with minors online, in particular, a fifteen-year-old and a sixteen-year-old from the United Kingdom, and a 12-15 year-old who the Defendant was planning to travel to pick up and bring back to Boise to live with him. Robert Banks will also testify that he has seen his father using one of the computers in his (father's) converted garage to chat online with a male who went by the screen name "bigdaddy" who was in Canada.[4] Robert Banks will testify that his father talked frequently online with "bigdaddy" and that he (Robert) saw "bigdaddy" once live via webcam around Christmas of 2004.

Robert Banks will testify that once around December 12, 2004, when he was online, his father contacted him via the Internet and told him to check out some pictures in his (the Defendant's) "shared-files" folder on WinMX. Robert Banks opened one of the images and it was a sexually explicit image of a little girl. Robert Banks remembers that he was signed on to WinMX as "Spawn1" and his father was signed on as "Papasmurf."

On December 22, 2004, Robert Banks, accompanied by his sister, sister-in-law and another person, went to the Boise Police Department and gave written statements to Detective

[4] "Bigdaddy" is a screen name used by the Canadian witness.

T.J. Gilbert asserting that Jerry Banks, Sr., had child pornography in his possession on his WinMX site where he was signed on as papasmurf.

6. Tammie Banks.

Tammy Banks is the Defendant's adult daughter. Tammie Banks will testify that she was continuously molested sexually by the Defendant starting when she was about 2½ years old (she was born in 1981) until he went to prison (in 1990).[5] She will also testify that her father caused her brothers to have sex with her.

Tammie Banks will testify that after Banks returned from prison, he became involved with computers and the Internet, and talked openly about having "cyber" sex with 13-year-old girls from other countries. She will also testify regarding the amount of time her father spent in the garage with the computers, and her knowledge that he has his own server that supported a chat room.

With respect to Counts Seven and Eight, Tammie Banks will testify that on December 22, 2004, she went to the Boise Police Department with her brother Robert, her sister-in-law Diane, and another person to give written statements to Detective T.J. Gilbert expressing concerns about her father's conduct. Tammie Banks will testify that on Friday, December 17, 2004, her father approached her about buying clothes for a 12-year-old girl he said he was planning to pick up from Long Beach, California, on January 5, 2005. Tammie saw a picture of this girl in her father's office in the garage. The Defendant told Tammie he would like her to move out to the garage so that this girl could have her room. Later, the Defendant told Tammie

[5] The Defendant was indicted for molesting Tammie Banks in Ada County Case No. 16884, but those charges were dismissed in return for his plea. As part of the plea bargain, one count of Sexual Abuse of a child under sixteen and two additional counts of Lewd Conduct with a minor under sixteen were dismissed in Ada County case CR 16884. These counts relate to acts against Tammie Banks when she was 8-years-old.

that he had bought some clothes for this girl himself, and took her to the garage to see them because he did not want his wife to know. He showed her girl's underwear, a bra, and a blue and black dress. According to Tammie, the dress was extremely similar to one that the Defendant bought for her when he was molesting her when she was a child.

Tammie Banks will also testify regarding the circumstances of her father leaving home in March, 2006, after learning he was under investigation. Tammie Banks was living with her parents at the time. She will say that Banks disposed of property, packed up most of his clothes and some computer equipment and left home late Monday, March 6, 2006, or early Tuesday, March 7, 2006, in the white Plymouth van he had just obtained.

7. RG (a minor).

RG is a high school student. (This person's full name has been disclosed to the defense). RG will testify that her stepfather is an acquaintance of the Defendant, and that she had been to the Defendant's house on Vista Avenue in Boise and in the garage where Banks keeps his computers, and used one of the computers to access the Internet. She will testify that approximately two years ago, the Defendant showed her child pornography images on one of the computers in the garage. She said the Defendant also told her that he had a chat room on the Internet.

8. Kathryn Elizabeth Banks.

Kathryn Elizabeth Banks is the Defendant's spouse. She is expected to say they lived at 2133 Vista Avenue beginning on October 10, 2003, and that her husband set up a number of computers connected to the Internet in the garage and spent all of his spare time in the converted garage.

Mrs. Banks has viewed the "test.wmv" video. She will identify the infant in the video as her grandson. Mrs. Banks will testify regarding the circumstances and approximate dates that the Defendant had access to this child.

The "test.wmv" video was taken with the child laying on a distinctive couch, which was in the converted garage in April, 2005. Mrs. Banks will identify the couch and testify when they removed it from the garage.

With respect to Counts Seven and Eight, Mrs. Banks will also testify that several months before the FBI searched her home in May 2005, her husband had met a 12 or 13-year-old girl on the Internet, and that he was planning to travel to California to pick her up and bring her back to live with them. She said there was once a photo of this young girl on the wall in the garage near where all the computer equipment was found.[6]

Mrs. Banks will testify regarding her husband's departure from Idaho after having a conversation with his attorney about potential charges and a pre-indictment plea offer. She will testify when she came home from work the day after her birthday, March 7, 2006, her husband had packed and was gone. Mrs. Banks will testify that her husband had asked her to leave with him, not saying where they would go. She will testify that she had an idea that he had gone to Mexico and that he had emailed her asking her to look into sending to him in Mexico some computer parts.

Mrs. Banks may also be asked to testify that her husband admitted to her (after he had talked to his attorney and been given information regarding the government's evidence and

---

[6] As noted above, the photograph is of Linda Martin as a child. Ms. Martin was the person with whom Banks was communicating when he thought he was talking to a 12-year-old girl in California (Ms. Martin is actually an adult). The Defendant's conversations with Ms. Martin are the basis of Count Seven, and the child pornography he sent her is the crux of Count Eight.

received a plea offer) that on one occasion he turned on a video camera when he (the Defendant) was changing "JB's" diaper. If the government asks her about this, she will testify that the Defendant's explanation for making the video was so he would not be accused of doing something wrong because of his past.[7]

10. Linda Martin (the Alleged "12-Year-Old" From Long Beach).

The United States also intends to present testimony from Linda Martin of Long Beach, California.[8] As stated above, Banks' family members had reported their concerns about the Defendant's conduct related to a 12-year-old girl to the Boise Police in December, 2004. The identity of this person, however, was not known to law enforcement until Ms. Martin's name and address were found in Banks' converted garage during the search on May 21, 2005.

Ms. Martin's testimony is direct evidence of Counts Seven and Eight, and is also offered as relevant to the issues of motive, intent, knowledge and identity as to the other counts.

According to Ms. Martin, she met Banks in an online WinMX chatroom called "Kid Sex and Incest"about two years ago. She will explain her reason for being in that chatroom and her intention to help the police find persons who were preying on children using the Internet. She will testify that Banks used the screen name papasmurf. She will describe how Banks sent her a

---

[7] If the Defendant wants his version of the event before the jury (that is, he made the video to protect himself from accusations of misconduct), he must take the witness stand, under oath, and subject himself to cross-examination. He cannot introduce his self-serving, exculpatory statement into evidence by eliciting it from his wife. *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (rejecting as hearsay defense's attempt to introduce exculpatory statements of defendant, that would have gone to disproving the existence of specific intent, during cross-examination of FBI agent and tribal investigator); *United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000) (the defendant could not elicit his own exculpatory statements during cross-examination of the government agent).

[8] Ms. Martin has an array of physical aliments and, in July, her physician wrote a letter that "strongly advised against" any long travel away from her primary health care providers. However, recently her physician cleared her to travel to Boise to testify.

private message that said, in effect, "I'm looking for my baby girl are you her?" Ms. Martin responded "yes" and that began their correspondence. Ms. Martin will testify that she told Banks she was a troubled twelve-year-old girl who was having problems with her mother. She will testify that Banks:

a. offered to take care of her;

b. told her that he had taught all of his children how to have sex by having sex with each of them himself; and

c. said he would show her how to have sex when she was ready.

Ms. Martin will testify that she scanned a photograph of herself taken when she was twelve-years-old and e-mailed it to Banks.

Ms. Martin will also testify that Banks e-mailed two photographs of a woman and an infant to her, telling her that the photos depicted his wife, Kathryn Banks, and grandchild. These photographs will be offered into evidence.[9]

Ms. Martin will testify that Banks sent her several pictures via the Internet which showed children approximately five or six years old performing sexual acts. Ms. Martin kept the pictures Banks had sent her and provided copies for the agents.

Ms. Martin also stated that Banks had sent her two web cams so that she could perform sexual acts while on-line while Banks watched, although she never installed them. Ms. Martin stated Banks had used a web cam to show her his genitalia. Ms. Martin will testify that Banks also sent her panties, a bra, and $20.00 for her to spend however she wanted.

---

[9] The FBI case agent has met Kathryn Banks. She recognized her in the two photographs with the infant. The photographs were also shown to Jerry Banks, Jr. Mr. Banks, Jr., advised that the photos depict his mother, Kathryn Banks, holding his daughter, Dawn Banks.

Ms. Martin said that Banks had told her he would travel from Idaho to Long Beach, California, to pick her up and bring her back to his home in Idaho to rescue her from her mother. Banks was supposed to travel to Long Beach in December of 2004.

Ms. Martin received a two-page letter from Banks written to whom he believed was Ms. Martin's mother. It is written on "Bankscom Electronics, Inc." letterhead, purporting to be a biography of Jerry L. Banks, Sr., written as a positive personal reference.

Ms. Martin will say that among the pictures Banks had e-mailed to her was a photograph of an adult male, nude. The photograph only shows the stomach to the mid-thigh area of the adult. According to Ms. Martin, Banks told her this was a photograph of himself. Ms. Martin gave a copy of this photograph the FBI agents. On the adult in the photograph, there is a very distinctive mole below the navel near the pubic line. A Court Order was obtained to allow the FBI to photograph Banks' pubic area. A comparison of the photos shows that same distinctive mole on both photos.

11. Computer Forensic Evidence.

A computer forensic expert, Lam Nguyen, will be testifying regarding the contents of the electronic media seized from the Defendant's home. A notice concerning the content of his testimony will be provided separately. Mr. Nguyen's reports and the derivative evidence he found supporting his findings has previously been provided to the defense. As may be relevant to this 404(b) notice, Mr. Nguyen will testify concerning:

a. Evidence that files on the computer with names containing code words for child pornography, such as "pedo," "hussyfan," "pthc," "lsm," and "r@ygold," were viewed or played on the computer, as were files with other sexually suggestive names; evidence will also show that files with child pornography names were downloaded, unzipped, saved, viewed on or deleted from various media seized from the Defendant's office. Other evidence, such as email

usage and configuration settings, will reveal that the Defendant regularly and recently used the computers containing evidence of child pornography;

b. Transcripts of chats between "Jerry," "Jerry Banks," and other individuals concerning sex with minors and sexually explicit images of minors;

c. The operation of WinMX file sharing software and transaction logs which show files with names containing file names or code words for child pornography being traded;

d. The presence of "Evidence Eliminator" and "History Clean" on the three computers seized from Banks on which child pornography was found, and the utility of those programs to someone interested in protecting his privacy and limiting forensic examination.

12. Sexually Explicit Cartoons of Sex Involving Minors.

FBI Special Agent Mary Martin will testify that during the execution of the search warrant in the Defendant's locked office/garage on May 21, 2005, agents discovered a 3-ring binder containing dozens of sexually explicit cartoons, many depicting sex between children and adults. Among the cartoons are sexually explicit drawings of Homer Simpson and his children and Japanese anime cartoons depicting prepubescent minors engaged in sex acts with adults or other minors. While not themselves violative of child pornography statutes,[10] these cartoons show the possessor's sexual interest in children and, therefore, are probative of the possessor's motive, intent, identity and knowledge concerning the sexually explicit images of actual minors charged in the Indictment.

---

[10] See, e.g., *United States v. Whorley*, 386 F. Supp.2d 693, 698 (E.D. Va 2005), finding sufficient evidence that an indictment charging similar cartoons alleged a prosecutable offense in violation of 18 U.S.C. § 1462(a), which criminalizes the importation or transportation via computer of "any obscene ··· book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character." Mere possession of these cartoons is not a crime but is, we submit, probative of the possessor's knowledge, intent, motive, and absence of accident or mistake with respect to the illicit digital images found on the computers and electronic media found nearby.

The 3-ring binder was found in the same desk where two of the three computers, and all four of the CD's containing sexually explicit images of minors charged in Counts One and Two of the Second Superseding Indictment were found.[11] The defendant's fingerprints were found on three of the four CD's, and also on the inside of the CD case of the fourth CD.

A file folder labeled "Adult Sites" was also found in a drawer in that same desk. Inside that folder were numerous pieces of paper that contain handwritten notes with the names of websites, including "www.Lo-Li-Ta.com," "www.x-Lolitas.com," "underage.euro.com," "Little-pussy.net," "Best.Baby-sex.com," "http://Teenbeastiality.net/animalsex/bonus1.html," "http://ninno:Teresa@www.pedo-love.com," and dozens more web sites of similar type self-evident as being child pornography sites. SA Martin will testify, based on her 18-years training and experience in law enforcement, half of which has involved investigating Internet child exploitation offenses, that web sites with names like these almost always contain child pornography or child erotica. Screen captures of some of those sites may be shown to illustrate their content.

Also in the "Adult Sites" folder were handwritten names of websites suggesting sexually explicit cartoons, including the Simpsons: ("//simpson-xtoonsex.com," "comicsex.org, cartoon.manga-x/freesite/pics/simson080.jpg," "http://porntoons.net/simpsons/pics/081/jpg,"), and Japanese anime ("anime-list.com," "anime-hentai.org/index.html," "Anime-city.com/hentai," "all-hentai.com/anime," and others set forth in discovery materials provided to the defense. There also was a sexually explicit cartoon depicting Bart Simpson having sex intercourse with his sister in this folder.

---

[11] A "pre-search" and "post-search" video recording depicting the defendant's garage/office and home was taken by agents and will be shown at trial as showing the general crime scene. That video is available for viewing by the defense on request.

Besides that, there were handwritten notes of phone numbers and innocuous, everyday activities in this folder. Witnesses familiar with the Defendant's handwriting will identify the salacious website names as being in the handwriting of the Defendant, thus creating a circumstantial chain of proof linking him to the sexually explicit cartoons of minors found inside his locked office/garage, amongst his property, and tending to show he knew about the other sexually explicit images of minors that were found on the electronic media seized from that desk and nearby.

13. Other Handwritten and Printed Notes.

SA Martin will also testify regarding a stenographer's notebook found in a filing cabinet next to a desk in the center of the Defendant's garage/office, a few feet from the computers and CD's that contained the charged images notebook, and other random pieces of paper with handwritten notes. Witnesses familiar with Banks' handwriting will identify the handwriting as his.

Some of the notations are Internet web sites with self-evident names, such as "lolitafucker.com," "pedo-lolita.com," "maxiyoung.com/tgp/?alolita.com" and many others (set forth in discovery materials provided to the defense) with names suggesting the sites contain sexually explicit content with minors. As mentioned above, SA Martin will testify that web sites with names like these almost always contain child pornography or child erotica

Various pieces of paper with relevant information tending to link the defendant to these crimes were found during the search. For example, a piece of paper with Linda Martin's name and address, and the defendant's name and address, apparently printed using a computer, was found in the same filing cabinet as the stenographer's notebook. Hand printed on that piece of paper was a website: "kiddypics.au#1." Another notation concerning Linda Martin was found inside a blue address book found on the desk in the center of the office:

Date 12/10/04 Lucylove987@hotmail.com
Linda Martin 12 Oct.29, 92
Dress Size 11-12
Blouse GirL Med
Bra 32 a
Jeans 24 x 27
Pantys 5
Shoes

Witnesses familiar with the Defendant's handwriting will identify the notation as having been written in his handwriting.

Documents containing handwriting that is consistent with the handwriting on the various notes found in Defendant's office/garage was found in the Defendant's vehicle at the time of his arrest at the Mexican border on April 2, 2006. These documents may be offered for inspection by the jury and comparison with the handwritten notes containing salacious websites as tending to show the identity of the Defendant.

Respectfully submitted this 13th day of October, 2006.

THOMAS E. MOSS
United States Attorney

/s/ James M. Peters
Assistant United States Attorney

/s/ Alexandra Gelber
Trial Attorney
United States Department of Justice
Child Exploitation and Obscenity Section

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office for the District of Idaho, and that a copy of the foregoing Government's Notice Pursuant to Fed. Fed. R. Evid. Rules 404(b) and 414 was served on all parties named below this 13th day of October, 2006.

___ United States Mail, postage prepaid

___ Hand delivery

___ Facsimile Transmission (fax)

___ Federal Express

_x_ ECF Filing

Mr. Dennis M. Charney
Charney Law Office
951 East Plaza Drive, Suite 140
Eagle, Idaho 83616

/s/ James M. Peters