*THOMAS E. MOSS*
*UNITED STATES ATTORNEY*
*JAMES M. PETERS, WSB NO. 7295*
*ASSISTANT UNITED STATES ATTORNEY*
*DISTRICT OF IDAHO*
*WASHINGTON GROUP PLAZA, PLAZA IV*
*800 PARK BOULEVARD, SUITE 600*
*BOISE, IDAHO  83712-9903*
*TELEPHONE:  (208) 334-1211*

*ALEXANDRA GELBER, DC BAR # 473773*
*TRIAL ATTORNEY, UNITED STATES DEPARTMENT OF JUSTICE*
*CHILD EXPLOITATION AND OBSCENITY SECTION*
*1400 NEW YORK AVENUE NW, SUITE 600*
*WASHINGTON DC 20530*
*TELEPHONE: 202-307-1316*

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 06-051-S-BLW-WBS |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S TRIAL** |
| v. | ) | **BRIEF** |
| | ) | |
| JERRY LEVIS BANKS, SR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Elements of the Offense and Stipulations

The United States and the Defendant have engaged in extensive pre-trial discussions regarding matters to which the Defendant has offered to stipulate.  The United States and the Defendant will file a separate pleading detailing the formal evidentiary stipulations.

Counts One and Two charge the Defendant with possession of child pornography[1] in violation of 18 U.S.C. § 2252(a)(4)(B). In order for the Defendant to be convicted of these charges, the United States must prove the following elements beyond a reasonable doubt:

> First, that the Defendant knowingly possessed one or more visual depictions of a minor engaged in sexually explicit conduct;
>
> Second, that the production of each of the visual depictions involved the use of a minor engaging in sexually explicit conduct and each of the visual depictions was of such conduct;
>
> Third, that the Defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct; and
>
> Fourth, that the visual depiction had been mailed, shipped, or transported in interstate or foreign commerce, by any means including by computer, or was produced using materials that had been transported in interstate and foreign commerce.

With one exception, the Defendant has stipulated to the second and fourth elements for all of the depictions listed in the Indictment. The exception is with respect to "TEST.wmv" (which is charged in Counts Two, Three, and Four). The Defendant will contest that the file depicts a minor engaged in sexually explicit conduct. With respect to the third element, the Defendant has stipulated that the individual who possessed the files would know that they involved the use of a minor engaged in sexually explicit conduct. Therefore, for Counts One and Two, the only element which the United States must prove is the first element, that is, that the items charged in the Indictment were knowingly possessed by the Defendant. Significantly, the United States need not prove that the Defendant knowingly possessed all of the files charged in Counts One and Two. If the Court finds beyond a reasonable doubt that the Defendant possessed at least one

---

[1] The term is used here generically to mean sexually explicit images of minors engaging in sexually explicit conduct.

*GOVERNMENT'S TRIAL BRIEF*            2

file in Count One, that is sufficient for a conviction on Count One.  Similarly, if the Court finds beyond a reasonable doubt that the Defendant knowingly possessed at least one file in Count Two, that is sufficient for a conviction on Count Two.

Count Three charges the Defendant with using a minor to produce a sexually explicit image, the "TEST.wmv" video, in violation of 18 U.S.C. § 2251(a).  To convict the Defendant of this crime, the United States must prove the following elements beyond a reasonable doubt:

> First, that at the time the video was made, the victim was under the age of eighteen years;
>
> Second, that the Defendant used the victim to take part in sexually explicit conduct for the purpose of producing a digital video of such conduct;
>
> Third, either that (a) the Defendant knew or had reason to know that such visual depiction would be mailed or transported across state lines or in foreign commerce; or (b) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce; or (c) the visual depiction was mailed or actually transported across state lines or in foreign commerce.

The Defendant has not stipulated to any of these elements.

Count Four charges the Defendant with transporting the video "TEST.wmv" in interstate or foreign commerce in violation of 18 U.S.C. § 2252(a)(1).  To convict the Defendant of this crime, the United States must prove the following elements beyond a reasonable doubt:

> First, that the Defendant knowingly transported a visual depiction in interstate or foreign commerce by any means, including a computer;
>
> Second, that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;
>
> Third, that such visual depiction was of a minor engaged in sexually explicit conduct;
>
> Fourth, that the Defendant knew that such visual depiction was of sexually explicit conduct; and

<blockquote>

<u>Fifth</u>, the Defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

</blockquote>

The Defendant has not stipulated to any of these elements.

The United States has agreed to move for dismissal of Count Five. The basis for this request is a necessary witness for Count Five is a Canadian citizen imprisoned in a federal correctional institution in Canada has refused to travel to the United States to testify. There is no process available in the Treaty for Mutual Legal Assistance between our two countries to compel this witness to travel. The Government of Canada has refused to permit Banks into Canada to participate in a deposition; hence, at this time, the Government is unable to prove the elements of Count Five.

Count Six charges the Defendant with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). To convict the Defendant of this crime, the United States must prove the following elements beyond a reasonable doubt:

<blockquote>

<u>First</u>, that the Defendant knowingly received a visual depiction in interstate commerce by any means, including a computer;

<u>Second</u>, that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

<u>Third</u>, that such visual depiction was of a minor engaged in sexually explicit conduct;

<u>Fourth</u>, that the Defendant knew that such visual depiction was of sexually explicit conduct; and

<u>Fifth</u>, the Defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

</blockquote>

The Defendant has stipulated to the second and third elements of the offense. He has also stipulated in part to the first, fourth, and fifth elements of the offense. That is, he stipulates that

the files in question were received in interstate or foreign commerce, and that the individual who received them would know that the files depicted minors engaged in sexually explicit conduct. Therefore, the only thing the United States must prove is that it was the Defendant who received those files. The Court need not find that the Defendant received all of these files to convict the Defendant. If the Court determines beyond a reasonable doubt that the Defendant received one of the files charged in the Indictment, that is sufficient to sustain a conviction.

The United States has agreed to move to dismiss Count Seven. Count Eight charges the Defendant with transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The elements of the offense are described above. Unlike Count Four, which charges the Defendant with transporting "TEST.wmv," with respect to Count Eight, the Defendant stipulates to the second and third elements of the offense. He has also stipulated, in part, to the first, fourth, and fifth elements of the offense, that is, that the files were transported in interstate or foreign commerce, and that the individual who transported them would know that the files depicted minors engaged in sexually explicit conduct. Therefore, the only thing the United States must prove with respect to Count Eight is that it was the Defendant who transported those files. The Court need not find that the Defendant transported all of these files to convict the Defendant. If the Court determines beyond a reasonable doubt that the Defendant knowingly transported one of the depictions charged in the indictment, that is sufficient to sustain a conviction.

Lascivious Exhibition

One of the issues that will be litigated is whether the "TEST.wmv" video (at issue in Counts Two, Three and Four) depicts sexually explicit conduct. "Sexually explicit conduct" includes "masturbation" or "lascivious exhibition of the genitals or pubic area of any person."

*See* 18 U.S.C. § 2256(2)(A)(iii) and (v).  The "TEST.wmv" video shows a male toddler having his diaper changed by an adult male.  Only the two forearms and hands of the person changing the diaper are visible.  The camera is focused between the baby's legs and shows a close view of his bare bottom and genitals.  While the video begins with a diaper change, after the baby is clean, the adult strokes the toddler's penis until it becomes erect and uses a finger to manipulate the toddler's rectum. The question for the Court will be whether this video is sexually explicit.

If it shows actual or simulated masturbation, then by definition it is sexually explicit.  18 U.S.C. § 2256(2)(A)(iii).  Whether the stroking of the penis constitutes masturbation will be a question for the Court as trier of fact.

If the "TEST.wmv" video shows a lascivious exhibition of the genitals or pubic area, then it is sexually explicit.  18 U.S.C. § 2256(2)(A)(v).  In *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal.1986), aff'd sub nom, *United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987), Judge Thompson of the Southern District of California identified six relevant but non-exclusive factors in determining a lascivious exhibition:

> 1)   Whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2)   Whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3)   Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4)   Whether the child is fully or partially clothed, or nude;
>
> 5)   Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6)   Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*GOVERNMENT'S TRIAL BRIEF*                6

Judge Thompson cautioned that "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." *Id*. at 832.

Ninth Circuit law establishes that lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles. A picture of a child's sex organs is displayed lasciviously if it is presented by the photographer so as to arouse or satisfy the sexual cravings of a voyeur. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). *Accord*, *United States v. Horn*, 187 F.3d 781, 789 (8th Cir.1999) ("we believe that when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer, the depiction is lascivious.")

### Evidentiary Stipulations

To expedite trial, the Defendant has also stipulated to the authenticity of certain pieces of evidence. He has also stipulated to the chain-of-custody as to some evidence which obviates the need to present a number of out-of-state witnesses. See Exhibit 35.

### Out-of-Court-Statements Offered for Non-Hearsay Purpose

Several witnesses, including Detective Randy Wickins and Special Agent Mary Martin, will be offering brief descriptions of what other people told them as explanations of why they did certain things. Such testimony is not hearsay. *See United States v. Munoz*, 233 F.3d 1117, 1135 (9th Cir. 2000) (holding that the district court did not abuse its discretion in admitting testimony of a witness regarding what another person told him because it was not offered to prove the truth

of the matter asserted, but to explain why the witness wrote letters to the defendants requesting that they suspend further sales.)

Out-of-Court Identification by Testifying Witness

The United States expects Det. Wickins to testify regarding his presentation of a photo array to Cheryl Johnston, who identified the Defendant from the array. Fed. R. Evid. 801(d)(1)(C) directs that this testimony is not hearsay: "[a] statement is not hearsay if . . . [t]he declarant testifies at trial ... and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person." Because Johnston will testify at trial and will be available for cross-examination regarding her statements of identification, Wickins' testimony is not impermissible hearsay.

The rule makes no distinction regarding whether the out-of-court statement is offered by a third-party or is the statement of identification of a witness on the stand regarding something the witness previously said. In fact, such testimony is admissible under Fed. R. Evid. 801(d)(1)(C), regardless of whether the witness confirms the identification in court. *United States v. Shryock*, 342 F.3d 948, 982 (9th Cir. 2003) (the government called a detective who testified that a testifying witness who claimed not to be able to identify his assailant at trial, identified the defendant as his assailant during an interview at the hospital, and later when shown a later photo line-up); *See also Rivera v. Fischer,* 2006 WL 1084912, (E.D.N.Y., 2006) citing *United States v. Salameh*, 152 F.3d 88, 125 (2d Cir.1998) (citing cases).

Lay Opinion - Handwriting of Relative

The United States expects that several of the Defendant's relatives will identify handwriting on certain documents as belonging to the Defendant. They will testify that they had seen many known examples of his distinctive writing through family correspondence, personal observation and business dealings, and had grown familiar with it. The Federal Rules of Evidence permit the introduction of lay opinion on the subject matter of handwriting. Federal Rule of Evidence 701 provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Cases which permit lay witnesses to identify a person's handwriting include *United States v. Barker*, 735 F.2d 1280 (11th Cir. (1984). In *Barker*, the Eleventh Circuit affirmed the trial court's decision to admit the testimony of two co-workers of the defendant that "they were familiar with the defendant's handwriting and stated that in their opinions it matched or was similar to the handwriting on the checks." 735 F.3d at 1283. The Court held that this testimony was properly admitted under Fed. R. Evid. 701 and 901(b)(2). *Id. See also*, *United States v. Tipton,* 964 F.2d 650, 655 (7th Cir. 1992) (witness familiar with defendant's handwriting and signature as a result of observing many documents he prepared was qualified to give lay opinion regarding defendant's signature and handwriting).

Additional authority for the admission of evidence predicated on lay opinion of handwriting is found in Fed. R. Evid. 901(a), which states in pertinent part, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." One of

the enumerated examples of authentication or identification conforming with the requirements of this rule is "[n]onexpert opinion as to the genuineness of handwriting based on familiarity not acquired for purposes of litigation. Fed. R. Evid. 901(b)(2); *cf*, *People v. Cepeda*, 851 F.2d 1564 (9th Cir. 1988) (where a witness had obtained his familiarity with defendant's handwriting for the purpose of testifying at trial, lay opinion testimony is not permitted).

Photographs of Distinctive Mole Offered for Purposes of Identification

The United States intends to introduce two cropped photos of Defendant's body showing a distinctive mole that is between his navel and his upper pubic hair line.  One photo was provided to investigators by Linda Martin, the primary witness for Count 8, who will testify that she received the photo from Jerry Banks along with several photos of Banks' family, a letter on Bankscom stationary purporting to be a personal recommendation, and several photos that the Defendant has stipulated are child pornography.

The second photo is a known photo of the Defendant, taken by the FBI pursuant to a court order.  These photos will be cropped so they will not show the Defendant's genitalia, but will show the mole area so the Court can reach its own conclusion regarding the similarity between the moles.  The photo of the Defendant's penis with the distinctive mole is probative as to the identify of the person who sent child pornography to Linda Martin (Count Eight).  The cropped, sanitized version will accomplish the purpose for which the photos are offered (identification) without presenting distasteful evidence.

### Witness Testifying Under Grant of Immunity

The Government has requested an Order immunizing Linda Susan Martin pursuant to Title 18 U.S.C. §§ 6001 <u>et seq</u>.  This Order was requested because the United States Attorney expects to ask Ms. Martin questions, the answers to which may violate her Fifth Amendment privilege against self-incrimination.  Based on her statements to the FBI, the Government expects that she will admit retaining child pornography that the Defendant sent her in a file that she maintained with other information about the Defendant.  The witness is and has been cooperative.  She met with FBI agents on several occasions without requesting or receiving immunity and freely gave information to them.  She has <u>not</u> refused to testify in this case and, as of this writing, she is not aware that the Government has requested that she be immunized.

### Marital Privilege

The United States expects to present the testimony of Kathryn Banks, who is the wife of the Defendant.  She is expected to testify that her husband spent large amounts of time in the garage/office with his computers (where the child pornography was found).  She will also testify as to who else had access to the garage/office.  She will testify that she viewed the "TEST.wmv" video (the operative evidence in Counts Three and Four) and will identify the persons depicted as her husband and her grandson.  She will testify that after learning that he was going to be charged in this case, and being advised of the content of the video, her husband first denied then admitted making it and offered various explanations to her regarding why he made it.  She will recount these explanations.  She is also expected to testify concerning the Defendant's statements in late 2004 regarding his intent to bring a 12-year-old girl to come live with them.

Mrs. Banks testified before the grand jury and is expected to testify at trial.[2]  Defendant does not have the standing to prevent her from testifying in this case, where the abuse of their common grandchild is at issue.

Federal Rule of Evidence 501 provides that, except as otherwise required by the Constitution, federal statute, or Supreme Court rule, "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501.  Federal courts recognize two marital privileges: the first is the testimonial privilege which permits one spouse to decline to testify against the other during marriage; the second is the marital confidential communications privilege, which either spouse may assert to prevent the other from testifying to confidential communications made during marriage. *United States v. Griffin*, 440 Fd. 3d 1138, 1143-44 (9th Cir. 2006), citing *Trammel v. United States*, 445 U.S. 40, 44-46 (1980).  The defendant-spouse cannot invoke the marital testimonial privilege to prevent his spouse from testifying; rather, it is the testifying spouse who can invoke or waive the privilege.  *Trammel*, 445 U.S. at 52-53 ("the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying").  The marital communications privilege covers (1) "only ... words or acts intended as communication to the other spouse," (2) "only those communications made during a valid marriage," and (3) "only ...

---

[2] On May 3, 2006, Mrs. Banks was subpoenaed to appear before the grand jury.  She appeared and gave testimony on May 10, 2006, about substantially the same subjects that she will be questioned about before the court.  The Government has no indication that Mrs. Banks will attempt to assert a marital privilege, but even if she does, we submit that she waived any privilege that exists when she testified before the grand jury.

those marital communications which are confidential." *Griffin*, 440 F.3d at 1143.

Marital privilege is subject to the well-established exception where one spouse commits an offense against the other, or either spouse's children. *United States v. White* 974 F.2d 1135, 1138 (9th Cir. 1992) (holding that the "marital communications" privilege should not apply to a crime committed against a stepchild living in the home). "In such a situation, courts have found a defendant-spouse may not commit abuse and then hide behind the marital privilege to shield himself from criminal prosecution based on that abuse." *United States v. Harrison*, – F. Supp – , 2006 WL 1131938 (M.D. Ga. 2006) (citing *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992). *See also*, Idaho Code § 9-203(7).

The Tenth Circuit extended this exception to any child relative visiting in the home. *United States v. Bahe*, 128 F.3d 1440, 1446 (10th Cir. 1997) (holding that exception to marital communications privilege exists for spousal testimony relating to abuse of a minor child within the household, even if neither spouse is parent of that child.). The reasoning in *Bahe* applies to this case. Public policy considerations ought to weigh in favor of the truth-finding process in a case like this, where the Defendant is accused of producing child pornography of his two-year-old grandson who was in his temporary care, particularly in light of the fact that the Defendant previously pled guilty to, and served 12-years in prison for, molesting the father of the two-year-old victim.

Self-Serving Statements

The Defendant has made various self-serving statements regarding his involvement in the incidents that are the subject of this litigation. It is improper for Defendant to attempt to introduce any of his statements through anyone but the Defendant himself.

It is axiomatic that a party cannot establish a defense by introducing his own statement through a third-party witness. If Defendant wants his version of the events before the court, he must take the witness stand, under oath, and subject himself to cross-examination. *United States v. Nakai,* 413 F.3d 1019, 1022 (9th Cir. 2005) (rejecting the defendant's attempt to introduce his exculpatory statements, that would have gone to disproving specific intent, via cross-examination of an FBI agent and tribal investigator.) *See also*, *United States v. Ortega*, 203 F.3d 675, 681-82 (9th Cir. 2000) (the district court properly barred the defendant from introducing his own exculpatory statements into evidence during cross-examination of the government agent).

<u>Protecting the Identity of Minor Victims</u>

The Defendant in this case is charged with making a sexually explicit video of a two-year-old male relative, and with receiving videos of other minors who will be identified. Because minors are involved, the privacy protection measures required by the Child Victims' and Child Witnesses' Rights Act (the "Act"), 18 U.S.C. § 3509, apply to this case. The parties thus far have adhered to the spirit of the Act by not mentioning the names of minor victims in any pleadings. *See* 18 U.S.C. §§ 3509(d)(1) and (2).

The Act permits the Court to issue a protective order "protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child." 18 U.S.C. § 3509(d)(3)(A). A protective order may:

> (i) provide that the testimony of a child witness, and the testimony of any other witness, when the attorney who calls the witness has reason to anticipate that the name of or any other information concerning a child may be divulged in the testimony, be taken in a closed courtroom; and

> (ii) provide for any other measures that may be necessary to protect the privacy of

*GOVERNMENT'S TRIAL BRIEF*            14

the child.

18 U.S.C. § 3509(d)(3)(B).

Although closure of the courtroom is authorized by this statute, the United States is not seeking such a measure. Rather, the United States merely asks that the minors involved be referred to by their first and last initials at trial and during pre-trial and post-trial proceedings. The United States makes this request in an effort to protect the privacy and reputation of the minors involved and to minimize additional emotional trauma which likely would result from publication of their identities.

Dated: November 6, 2006    Respectfully Submitted,

THOMAS E. MOSS
UNITED STATES ATTORNEY


/s/ James M. Peters
JAMES M. PETERS
Assistant United States Attorney


/s/Alexandra Gelber
ALEXANDRA GELBER
Trial Attorney
United States Department of Justice
Child Exploitation and Obscenity Section

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2006, the foregoing Government's Trial Brief was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Dennis M Charney        dennis_charney@msn.com; assistant@charneylawoffice.com

 /s/Katherine J. Fritze
Katherine J. Fritze
Legal Assistant